Reversed and Remanded and Majority and Dissenting Opinions filed October
11, 2007








Reversed
and Remanded and Majority and Dissenting Opinions filed October 11, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00962-CV

____________

 

WALGREEN COMPANY, Appellant

 

V.

 

CYNTHIA HIEGER AND ROY C. HIEGER, BOTH INDIVIDUALLY
AND AS NEXT FRIEND OF DAVID C. HIEGER, A MINOR, Appellees

 



 

On Appeal from the 281st District
Court

Harris County, Texas

Trial Court Cause No. 2005-79787

 



 

D I S S E
N T I N G   O P I N I O N

I
respectfully dissent. 








This
court must review a trial court=s ruling relative to the adequacy of an expert report under
an abuse of discretion standard.   Am. Transitional Care Ctrs. v. Palacios,
46 S.W.3d 873, 877 (Tex. 2001).  A trial court abuses its discretion if it acts
in an arbitrary or unreasonable manner without reference to guiding rules or
principles.  See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999). 
When reviewing matters committed to the trial court=s discretion, we may not substitute
our own judgment for that of the trial court.  Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992).  A trial court does not abuse its discretion
merely because its discretionary decision is different from what an appellate
court=s disposition would be  under similar
circumstances.  See Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241B42 (Tex. 1985).  The majority
acknowledges but refuses to be constrained by this standard. 

I.  Texas Civil Practice and Remedies Code Section 74.351 

Pursuant
to section 74.351, a health-care-liability claimant must provide an expert
report to the defendant no later than 120 days after the original petition was
filed.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a) (Vernon Supp. 2006).  If a claimant timely
furnishes an expert report, a defendant may file a motion challenging the
adequacy of the report.  See id.  The trial court shall grant the
motion only if it appears that the report does not represent a good faith
effort to comply with the statutory definition of an expert report.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(l) (Vernon Supp. 2006).  In
determining whether the report represents a good faith effort, the trial court=s inquiry is limited to the four
corners of the report.  See Palacios, 46 S.W.3d at 878. 








Under
the statute, an expert report is defined as a written report by an expert that
provides a fair summary of the expert=s opinions as of the date of the
report regarding: (1) applicable standard of care, (2) the manner in which the
care provided failed to meet the standards, and (3) the causal relationship
between that failure and the injury, harm, or damages claimed.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6) (Vernon Supp. 2006); Palacios,
46 S.W.3d at 878B79. Although a plaintiff need not marshal all of her proof,
the expert=s report must include opinions on the three statutory elementsCstandard of care, breach, and
causation.  See Palacios, 46 S.W.3d at 878B79.  In compliance with these
standards, the plaintiff must incorporate enough information to fulfill two
purposes: (1) inform the defendant of the specific conduct the plaintiff has
called into question, and (2) provide a basis for the trial court to conclude
that the claims have merit.  Id. at 879.  A report that merely expresses
the expert=s conclusions about the standard of care, breach, and causation does not
fulfill these two purposes.  Id.   The expert must explain the basis for
his statements and must link his conclusions to the facts.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). 
However, to avoid dismissal, a plaintiff need not present all the evidence
necessary to litigate the merits of her case.  Palacios, 46 S.W.3d at
879. The report may be informal in that the information need not fulfill the
same requirements as the evidence offered in a summary-judgment proceeding or
at trial.  Id.  Moreover, the expert is not required to express the
causal relationship in terms of reasonable medical probability or other Amagic@ words.  Wright, 79 S.W.3d at
52.  

II.  Analysis 

Pursuant
to section 74.351(i), Anothing in this section shall be construed to mean that a
single expert must address all liability and causation issues with respect to
all physicians or health care providers or with respect to both liability and
causation issues for a physician or health care provider.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(i) (Vernon Supp. 2006). 
Therefore, Ginsburg=s and Dr. Young=s reports may be read together to
satisfy the expert report requirements.

A.        Diane Ginsburg=s Expert Report 








The
majority correctly notes that Ginsburg is not qualified under section 74.351 to
provide medical causation opinions.  To render an expert report regarding
causation, the expert must be licensed to practice medicine in one or more of
the states in the United States.  Randalls Food and Drugs v. Kocurek,
No. 14B05B01184BCV, 2006 WL 2771872, at *3 (Tex. App.CHouston [14th Dist.] Sept. 28, 2006,
no pet.) (mem. op.) (holding expert with an undergraduate degree and master=s degree in microbiology and a Ph.D.
in toxicology and experimental surgery was not qualified to render an expert
opinion regarding causation because she was not licensed to practice medicine
in the United States).  Here, Ginsburg was not qualified to give an opinion
regarding causation because she is not licensed to practice medicine in one or
more of the states in the United States.  However, Ginsburg was qualified to
give an opinion regarding the remaining two statutory requirements: standard of
care and breach of standard of care.  She addressed standard of care and breach
of standard of care in her expert report as follows:   

The standard of care applicable to Walgreens Pharmacy was to ensure
that medications are dispensed and delivered safely and accurately as
prescribed by the physician in accordance with Texas State Board of Pharmacy
Rules ' 291.32.C.5. Specifically, the standard of care
obligates the pharmacist to assure that he/she has dispensed the right drug, in
the right dose, and by the right route to the right patient (the Afour rights@).
The pharmacist must systematize the process in such a way that the Afour rights@
are observed and the drug dispensed to the patient without error.  The standard
of care demands a high degree of care on the part of the pharmacist, and he/she
must check the medicine and labeling very carefully before dispensing so as to
avoid error, because there can be significant consequences to medication
errors.  In my opinion, Walgreens Pharmacy breached the standards of care in
failing to observe the Afour rights@,
failing to accurately fill Ms. Hieger=s
prescription, and failed to exercise a high degree of care in checking the
accuracy of the prescription before  dispensing it.  

 

Accordingly,
the Hiegers were required to satisfy their statutory obligation as to the
causation element through Dr. Reed Young=s expert report

B.        Dr. Reed Young=s Expert Report 








Walgreen
contends Dr. Young=s report does not provide a fair summary of the alleged
causal relationship between the incorrectly refilled prescription and Ms.
Hieger=s alleged injuries. The majority
concludes that Dr. Young=s report is insufficient because Dr. Young has expressed Aan opinion on a possibility, not an
ultimate opinion on causation.@  I disagree.  The relevant portion of Dr. Young=s report is restated below for
clarification and emphasis.

Paxil is an
antidepressant with anxiolytic properties.  It is prescribed for rheumatic pain
syndromes and clearly has a central action against pain.  In my own experience,
when Paxil is stopped abruptly, the patient can go through a very uncomfortable
period of worse depression, worse pain, and marked anxiety and hyper activity. 


Ambien,
like Halcion, can cause peculiar side effects if someone takes it and tries to
stay awake for awhile; specifically they can act somewhat psychotic. 

I was told
by the patient that in October, 2003, a prescription for Paxil was miss-filled
(sic) with Ambien and miss-labeled (sic). As applied to these events, when
cynthia (sic) Hieger suddenly ceased taking her Paxil and began taking
Ambien for daytime use, her complaints of psychosis, hypersensitivity,
jitteriness, and increased pain are consistent with the known side effects
of each medication.  

(emphasis added).      

Walgreen
argues that the language Aconsistent with@ does not demonstrate a causal
connection.  Specifically, Walgreen contends the language indicating that Ms.
Hieger=s symptoms are  Aconsistent with@ the known side effects of the
medications is not the same as stating that the symptoms were in fact caused by
the medication. 

However,
considering the four corners of the report, I note that Dr. Young first
explained the side effects resulting from abrupt termination of  treatment with
Paxil.  He then explained the side effects of taking Ambien while trying to
stay awake.  The symptoms he described were not the generally known side
effects from taking the medications.  He also explained the side effects of the
medications as applied to these specific factsCthe abrupt discontinuation of Paxil
and taking Ambien during the day.  Dr. Young wrote, Aas applied to these events@ Ms. Hieger=s complaints Aare consistent with@ the side effects of discontinuing
Paxil and taking Ambien during the daytime.          








Walgreen
argues, by analogy, that back pain is Aconsistent with@ a herniated lumbar disc and that to
say back pain is Aconsistent with@ a herniated lumbar disc is not the
same as opining that the pain was caused by a herniated disc.  However,
appellant ignores the fact that Dr. Young described side effects of the
medications as applied to the Ms. Hieger=s particular complaints immediately
before opining that her symptoms were consistent with those side effects. 
Therefore, the words Aconsistent with the known side effects of each medication@ were not in isolation or without
definition, as in appellant=s analogy.  

In
support of its argument, Walgreen cites several cases in which other courts of
appeals found language in expert reports conclusory.  However, none of the
cases involved misfilled prescriptions by a  pharmacy.  Moreover, those courts
concluded that various statements regarding causation contained in expert
reports were conclusory because they lacked information linking the expert=s opinion to the defendant=s alleged breach.[1] 









In
contrast to the cases cited by Walgreen, Dr.  Young explained the side effects
of the medications as applied to these facts and then explained that Ms. Hieger=s complaints were Aconsistent with@ the side effects of the
medications.  He sufficiently explained the basis for his statements and linked
his conclusions to the facts.  See Wright, 79 S.W.3d at 52.  Moreover,
his report constituted a good faith effort to summarize causation because it
informed Walgreen of the specific conduct called into question and provided a
basis for the trial court to conclude that the claims had merit.  See
Palacios, 46 S.W.3d at 879.  Therefore, it is my considered opinion that
his statements were not conclusory.  

For all
the reasons stated above, I would hold that the trial court did not act in an
arbitrary or unreasonable fashion without reference to guiding rules or
principles.  Accordingly, I would overrule Walgreen Co.=s sole issue and affirm the judgment
of the trial court. 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Majority and
Dissenting Opinions filed October 11, 2007.

Panel consists of Justices Yates,
Frost, and Seymore. (Yates, J., majority).

 









[1]  See Wright, 79 S.W.3d at 51 ( AI do believe that it is reasonable to believe that if
the x-rays would have been correctly read . . . [patient] would have had the
possibility of a better outcome@); Logino v.
Crosswhite, 183 S.W.3d 913, 917B18
(Tex. App.CTexarkana 2006, no pet.) (language that Athis prolonged symptomatology was a cause of [patient=s] significant and permanent neurological injuries@ only stated that delay in diagnosis caused
significant and permanent neurological injuries without explaining basis for
conclusion); Gray v. CHCA Bayshore, 189 S.W.3d 855, 859 (Tex.
App.CHouston [1st Dist.] 2006, no pet.) (expert report only
indicated doctors failed to monitor the plaintiff=s knee properly during his surgery without explaining how the departure
from standard of care caused patient=s
injury); Pisasale v. Ensign Group, Inc., No. 11-05-00196-CV, 2006 WL
2567400, at *4 (Tex. App.CEastland Sept. 7, 2006, pet. denied) (mem. op.)
(language that AI think their negligence was a proximate cause@ was speculative and conclusory because it did not 
eliminate preexisting conditions); Martinez v. Riegel, No. 04B5-00336-CV, 2006 WL 1748442, at *4 (Tex. App.CSan Antonio June 28, 2006, no pet.) (mem. op.)
(language that  Aanesthetic agents@
irritated Athe already inflamed lung tissue@ did not adequately explain causal relationship
between surgery and injuries); Northeast Med. Ctr. v. Crooks, No.
06-05-00149-CV, 2006 WL 1358361, at *6 (Tex. App.CTexarkana May 19, 2006, no pet.) (mem. op.) (report did not draw a
causal connection between nursing home patient=s fall, which resulted in broken hip, and his death); Lopez v.
Monetemayor, 131 S.W.3d 54, 59B60
(Tex. App.CSan Antonio 2003, pet. denied) (language that Ait is the aspiration of the bridge section which
caused and precipitated the medical circumstances leading to the patient=s demise@ 
did not link dentist=s failure to perform an x-ray to patient=s death); Hardy v. Marsh, 170 S.W.3d 865, 869B70 (Tex. App.CTexarkana
2005, no pet.) (language that Aif this patient
. . . had had more immediate treatment that a salvage of his right leg would
have been more probable@ was not sufficiently specific establish causation);
Costello v. Christus Santa Rosa Health Care Corp., 141 S.W.3d 245, 249
(Tex. App.CSan Antonio 2004, no pet.) (language that A[i]f this patient would have been appropriately
triaged and evaluated, then in all reasonable medical probability she would
have survived@ failed to state the medical basis or reasoning or
explain how failure to act was a substantial factor in bringing about patient=s death); Barko v. Genzel, 123 S.W.3d 457, 460
(Tex. App.CEastland 2003, no pet.) (language that the Aviolations of the standards of emergency medical
practice were a proximate cause in this patient=s injury@ did not indicate that patient would have
satisfactorily recovered from the back injury but for doctor=s negligence); Villa v. Hargrove, 110 S.W.3d
74, 78 (Tex. App.CSan Antonio 2003, pet. denied) (language that Ahad either of these defendants provided the
appropriate care, to an overwhelming probability, [patient] would be alive and
well today@ did not link  actions of doctors to patient=s death).